UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL PILANT,<br><br>                      Plaintiff,<br><br>v.<br><br>CAESARS ENTERPRISE SERVICES, LLC, and CAESARS ENTERTAINMENT, INC. et al.,<br><br>                      Defendant. | Case No.: 20-CV-2043-CAB-AHG<br><br>**ORDER DENYING MOTION TO DISMISS FOR FAILURE TO JOIN AN INDISPENSABLE PARTY AND GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>[Doc. No. 3] |

      This matter is before the Court on a motion by specially appearing Defendants Caesars Enterprise Services, LLC ("CES") and Caesars Entertainment, Inc. ("CEI") to dismiss the complaint for failure to join an indispensable party and for lack of personal jurisdiction. The motion has been fully briefed, and the Court deems it suitable for submission without oral argument. As discussed below, the motion to dismiss for failure to join an indispensable party is denied and the motion to dismiss for lack of personal jurisdiction is granted in part and denied in part.

**I.    Background**

      On August 31, 2020, Plaintiff Darrell Pilant filed this lawsuit in San Diego County Superior Court. The complaint alleges that Defendants jointly employed Pilant as senior

vice president and general manager of Harrah's Resort SoCal hotel/casino (the "Resort"), which is owned by The Rincon Band of Luiseño Indians (the "Rincon Band"), until Pilant's resignation in May 2020. [Doc. No. 1-5 at ¶¶ 6, 9, 10, 16.]

Although it is not expressly alleged in the complaint, it is implied that at some point prior to May 2020, the Resort closed because of the COVID-19 pandemic.  In early May 2020, Rincon Band Tribal Chairman Bo Mazzetti informed Pilant that San Diego tribes intended to inform California Governor Gavin Newsom that they planned to reopen their respective casino resorts on or after May 18, 2020.  [*Id.* at ¶ 17.]  On May 15, 2020, Governor Newsom responded to a letter from San Diego tribal leaders and strongly advised that casinos not be reopened.  [*Id.* at ¶ 18.] On May 18, 2020, Pilant expressed his concerns about the health and safety of reopening the Resort to Robert Livingston (Pilant's immediate supervisor), N. Lynne Hughes (Defendants' chief legal officer), and Tom Jenkin (Defendants' global president).  [*Id.* at ¶ 19.]  Later that day, Hughes and Livingston informed Pilant that Defendants were proceeding with reopening the Resort on May 22, 2020.  [*Id.*]  Pilant submitted his resignation on May 19, 2020, and then spent the two days assisting with the preparations for reopening the Resort before handing in his gaming badge and other company materials to Livingston on May 21, 2020.  [*Id.* at ¶¶ 21, 23.]  The Resort ultimately reopened on May 22, 2020.  [*Id.* at ¶ 24.]

The complaint names CES and CEI (along with 20 "Does") as defendants and asserts four causes of action: (1) wrongful termination in violation of public policy; (2) violation of California Labor Code § 6310; (3) violation of California Labor Code § 1102.1; and (4) breach of a written employment agreement.  The complaint alleges that Defendants constructively terminated Pilant because he opposed the decision to reopen the Resort as endangering the health and safety of employees and the public due to the COVID-19 pandemic. According to Pilant, he "was forced to resign because [Defendants] continued to insist that he reopen the [Resort] despite the health and safety risks." [Doc. No. 1-5 at ¶ 25.]  On October 16, 2020, Defendants removed the case to this court, alleging the existence of subject matter jurisdiction on the basis of a federal question under the Indian

Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq.*, and diversity. [Doc. No. 1.] Defendants now move to dismiss the complaint on two separate grounds: (1) under Federal Rule of Civil Procedure 12(b)(7) for failure to join an indispensable party; and (2) under Rule 12(b)(2) for lack of personal jurisdiction over either CES or CEI.

**II.     Motion to Dismiss for Failure to Join an Indispensable Party**

Federal Rule of Civil Procedure 12(b)(7) permits a party to move to dismiss a complaint for "failure to join a party under Rule 19." "Under Rule 19, if the party 'who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.' If it cannot proceed, a motion to dismiss under Rule 12(b)(7) for failure to join a party is properly granted." *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, 932 F.3d 843, 851 (9th Cir. 2019) (quoting Fed. R. Civ. P. 19(b)).

Defendants argue that the Rincon Band is a required party that cannot be joined because of sovereign immunity and that therefore this action must be dismissed. A three-step inquiry applies to a motion to dismiss for failure to join an indispensable party under Rule 19:

> 1. Is the absent party necessary (i.e., required to be joined if feasible) under Rule 19(a)?
>
> 2. If so, is it feasible to order that the absent party be joined?
>
> 3. If joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed?

*Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012) (citing *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779-80 (9th Cir. 2005)).

The instant motion falls short at the first step of this inquiry. "A party may be necessary under Rule 19(a) in three different ways." *Id.* First, under Rule 19(a)(1)(A), a party must be joined "if the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). Alternatively, under Rule 19(a)(1)(B), a party must be joined if that party "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or

impede the [party]'s ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B).

"There is no precise formula for determining whether a particular non-party is necessary to an action. The determination is heavily influenced by the facts and circumstances of each case." *Confederated Tribes of the Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991) (internal citations and quotations omitted). Because, as discussed below, the facts and circumstances of this case demonstrate that the Rincon Band is not a necessary party under either subpart of Rule 19(a)(1), the Court need not reach the second and third steps of the inquiry. *See generally Alto v. Black*, 738 F.3d 1111, 1126 (9th Cir. 2013) ("Only if we determine that the Band is a required party do we proceed to the second Rule 19 inquiry: whether joinder is feasible, or is barred by sovereign immunity. Finally, only if joinder is impossible must we determine whether, in 'equity and good conscience,' the suit should be dismissed.") (citations omitted).

### A. The Court Can Accord Complete Relief To Pilant From Defendants

"This factor is concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action." *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004) (quoting *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983)). An inability to obtain complete relief arises "frequently where plaintiffs are unable to obtain declaratory and injunctive relief against absent parties and are thus unable to obtain full redress." *Goose Pond Ag, Inc. v. Duarte Nursery*, Inc., No. 2:19-CV-02631-KJM-DB, 2020 WL 6043951, at *3 (E.D. Cal. Oct. 13, 2020) (citing *U.S. ex rel. Morongo Band of Mission Indians v. Rose*, 34 F.3d 901, 907-08 (9th Cir. 1994)).

Here, Plaintiff seeks only monetary damages, costs and fees from Defendants, his alleged former employers. He does not ask the Court to award any compensation from the Rincon Band, and he does not seek any injunctive relief, let alone any that would be ineffectual if it did not apply to the Rincon Band. This court can accord the relief Plaintiff

seeks (monetary damages, costs, and fees from Defendants) in the Rincon Band's absence. *Cf. EEOC v. Peabody W. Coal Co.,* 400 F.3d at 780 (noting that "monetary damages for the charging parties can be awarded without the [Navajo] Nation's participation. But declaratory and injunctive relief could be incomplete unless the Nation is bound by res judicata."). Accordingly, the Rincon Band is not a necessary or required party under Rule 19(a)(1)(A).

### B. The Rincon Band Does Not Have A Legally Protected Interest

"To come within the bounds of Rule 19(a)(1)(B)(i), the interest of the absent party must be a legally protected interest and not merely some stake in the outcome of the litigation." *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 996 (9th Cir. 2020). The interest "must be 'more than a financial stake.'" *Dine Citizens Against Ruining Our Env't*, 932 F.3d at 852 (quoting *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990)). This question "normally involves an inquiry into the possibility of the absent party being collaterally estopped in another proceeding." *U.S. ex rel. Morongo Band of Mission Indians*, 34 F.3d at 908.[1]

Defendants argue that the Rincon Band has an interest in this action because Pilant's claims purportedly "cannot be litigated fairly without trampling on the sovereignty of the

---

[1] The Ninth Circuit has also held that an absent party is not "necessary" solely because that party did not claim a legally protected interest in the litigation itself. *See United States v. Bowen*, 172 F.3d 682, 688-89 (9th Cir. 1999) ("[The absent party] was aware of this action and chose not to claim an interest. That being so, the district court did not err by holding that joinder was 'unnecessary.'"); *see also Northrop Corp.*, 705 F.2d at 1043 ("Subparts (i) and (ii) are contingent, however, upon an initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action."). Along these lines, Rule 19(a)(1)(B) specifically states that an absent party must be joined if "*that person* claims an interest. . . ." (*emphasis* added). Thus, Defendants "cannot claim that [the Rincon Band has] a legally protected interest in the action unless [the Rincon Band itself] claim[s] that [it] ha[s] such an interest." *In re Cty. of Orange*, 262 F.3d 1014, 1023 (9th Cir. 2001). With their motion, Defendants include a declaration from the Attorney General of the Rincon Band that states: "This lawsuit may implicate, impermissibly, the Rincon Band's contractual rights, that run between the Rincon Band and its [National Indian Gaming Commission]-approved Managing Agent, HCAL, LLC, pursuant to the Management Agreement governing the Rincon Casino." [Doc. No. 3-2 at ¶ 17.] It is unclear whether this vague statement satisfies Rule 19(a)(1)(B)'s requirement that the Rincon Band claim a legally protected interest in this litigation. If it does not, then the motion fails on this ground alone.

Rincon Band," and that his claims interfere with "the Rincon Band's management of its essential business." [Doc. No. 3-1 at 15-16.] The complaint, however, does not support these characterizations of Pilant's claims. While Plaintiff alleges that he did not believe that the Resort could be opened on May 22, 2020, in a manner that protected the safety of its employees and patrons, the complaint does not allege that the Rincon Band did not have the right to make that decision or that the decision itself violated any laws or subjected the Rincon Band to any liability to Pilant. Whether the Rincon Band had the right to reopen the Resort and whether Defendants violated Pilant's rights under California law are separate questions, and only the latter is before the Court here. The Rincon Band does not have a legally protected interest in whether Defendants violated California law with respect to Defendants' employment of Pilant as alleged in the complaint. Moreover, any judgment in favor of Pilant in this case will not impact the Rincon Band's sovereignty or its ability or right to operate the Resort—it will merely require Defendants to pay money to Pilant.

Defendants also contend that holding them liable "may subject them to inconsistent obligations of either refusing to fulfill contractual obligations to support operations of the Rincon Casino or face the consequences of refusing to do so." [Doc. No. 3-1 at 22.] First, that Defendants have a choice to either comply with contractual obligations or face the consequences for breaching that contract is not inconsistent, and Defendants are in this position regardless of the outcome of this litigation. Second, any judgment against Defendants here would not mandate any change in Defendants' agreements related to the Resort or require them to breach those agreements. "Instead, like many other external events . . . the judgment could precipitate one party to refuse to perform, in which case the other party would have its legal remedies." *See Disabled Rights Action Comm.*, 375 F.3d at 881.

In their reply, Defendants argue that Plaintiff failed to address any of the twenty-seven cases that Defendants boast they cited in their moving papers where an Indian Tribe was deemed an indispensable party. The Court, however, has reviewed those cases, and they are all distinguishable from the facts here. Indeed, as far as this Court can discern,

not one of the cases cited by Defendants in their motion involved a plaintiff seeking strictly monetary damages from the named defendant.

Further, unlike many of the cases Defendants cite, Plaintiff does not contest the Rincon Band's status as an Indian Tribe or the Band's rights to land. *See, e.g., Jamul Action Comm.*, 974 F.3d at 988 ("This case concerns the Village's status as a federally recognized Indian tribe."); *Clinton v. Babbitt*, 180 F.3d 1081, 1083 (9th Cir. 1999) ("The plaintiffs' suit is the latest chapter in a more-than-a-century-old dispute between members of the Hopi Tribe and the Navajo Nation over the use of approximately 2.5 million acres in northern Arizona."); *Pit River Home & Agr. Co-op. Ass'n v. United States*, 30 F.3d 1088, 1092 (9th Cir. 1994) ("This lawsuit involves a dispute over which group of Indians are the beneficial owners of a certain piece of property."); *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1457 (9th Cir. 1994) (plaintiff filed the lawsuit "seeking to overturn the Department of Interior's decision that certain fractional property interests within the Quinault Reservation escheat to the Quinault Indian Nation rather than to the Quileute Indian Tribe"); *Confederated Tribes of Chehalis Indian Reservation*, 928 F.2d at 1498 (plaintiffs sought "a complete rejection of the Quinault Nation's current status as the exclusive governing authority of the reservation").

Nor does Plaintiff challenge any aspect of Defendants' contract(s) with the Rincon Band. *See, e.g., Dawavendewa v. Salt River Project Agr. Imp. & Power Dist*., 276 F.3d 1150, 1157 (9th Cir. 2002) (affirming "the fundamental principle [that] a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract").

Nor does Plaintiff seek injunctive relief as is the situation in most or all of Defendants' cases. *See, e.g., Jamul Action Comm.*, 974 F.3d at 990 (noting that the plaintiff "filed this action challenging continued construction and operation of a casino on the Village's federal trust land."); *Dawavendewa*, 276 F.3d at 1155 (holding that the plaintiff sought "injunctive relief to ensure his employment . . . and to prevent [the defendant] from employing the Navajo hiring preference policy required by its lease with the Nation," and

that he could not receive complete relief because the Navajo Nation would not be bound by such an injunction); *Shermoen v. United States*, 982 F.2d 1312, 1314 (9th Cir. 1992) (plaintiffs were "seeking injunctive relief and a declaration that the Hoopa–Yurok Settlement Act violates their constitutional rights").

Nor does Plaintiff challenge agreements or seek to enjoin negotiations between federal or state government entities and the Rincon Band or agency actions affecting the Band. *See, e.g., Dine Citizens Against Ruining Our Env't,* 932 F.3d at 847 (plaintiffs were "challenging a variety of agency actions that reauthorized coal mining activities on land reserved to the Navajo Nation"); *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1020 (9th Cir. 2002) (stating that the plaintiffs were "seeking to prevent the Governor [of Arizona] from negotiating new compacts permitting casino-type gaming or from permitting the existing compacts to be automatically renewed"); *Kescoli v. Babbitt*, 101 F.3d 1304, 1307 (9th Cir. 1996) (plaintiff was challenging a condition of a settlement agreement between a mining company, the Department of Interior Office of Surface Mining, the Navajo Nation, and the Hopi Tribe).

A Ninth Circuit case that Defendants notably do not cite is far more analogous than any of the cases in the various string cites littered throughout Defendants' briefs. In *Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861 (9th Cir. 2004), the plaintiff sued two private entities (referred to in the opinion as "Events" and "Cowboys," respectively) that staged a rodeo at a publicly owned arena for violations of Title III of the Americans with Disabilities Act ("ADA"). *Disabled Rights Action Comm.*, 375 F.3d at 865. The district court held that the university system that owned the arena where the rodeo was held was an indispensable party under Rule 19. The Ninth Circuit reversed, rejecting the argument that the university system had a legally cognizable interest simply because one of the defendants had a contract with the university system to run the rodeo. *Id.* at 881. Notably, the holding distinguishes several of the cases cited by Defendants and rejects most or all of the arguments Defendants make here:

> Disabled Rights' suit is not "an action to set aside ... a contract," *Dawavendewa*, 276 F.3d at 1156 . . ., an "attack on the terms of a negotiated agreement," *Clinton*, 180 F.3d at 1088, or "litigation seeking to decimate [a] contract." *Dawavendewa*, 276 F.3d at 1157. Rather, Disabled Rights seeks Events' and Cowboys' compliance with Title III of the ADA. No term of the contract [between Events and the university system] requires discrimination on the basis of disability or precludes Events and Cowboys from accommodating disabled individuals to the extent Title III requires them to do so. Thus, if Disabled Rights is successful, the contract would not be invalidated or "set aside," but would remain legally binding.
>
> It is possible, of course, that if Events and Cowboys are ordered to comply with Title III, they may decide to hold the Rodeo elsewhere. If Events and Cowboys do so choose, then University System might have an action against Events for breach of contract for any damage suffered as a result of the private entities' refusal to abide by their agreement. . . . But the judgment itself would not mandate any change in the agreement, or any breach. Instead, like many other external events—a drop in the financial fortunes of the group sponsoring the event, or an increase in its insurance premiums due to safety concerns—the judgment could precipitate one party to refuse to perform, in which case the other party would have its legal remedies.

*Id*. The opinion goes on to note that "there is no allegation that University System had as an objective in negotiating the contract, let alone a primary objective, preservation of a physically inaccessible venue. Disabled Rights' suit thus does not threaten to destroy the contract nor University System's bargained-for rights." *Id.* at 882.

Here, as in *Disabled Rights* and as discussed above, Pilant is not seeking to attack any contract or seeking a holding that any action by the Rincon Band violated any laws. Likewise, it is of course possible that if Pilant obtains a judgment in this lawsuit, Defendants will seek indemnification from the Rincon Band, or breach an agreement with the Rincon Band, or seek a change in an agreement with the Rincon Band, but the judgment against Defendants would not mandate any such action by Defendants. Put differently, Defendants could pay Pilant while still honoring their agreements with the Rincon Band related to the Resort.

The Ninth Circuit also rejected arguments about potential future losses of income by the absent party like those made by Defendants here:

> [I]t is true that, as a practical matter, a judgment against Events or Cowboys could dissuade other private entities subject to Title III from entering into agreements with University System for use of the Center. We are cognizant that, should Disabled Rights prevail, University System stands to lose a valuable source of income—not an insubstantial consideration. But a financial stake in the outcome of the litigation is not a legally protected interest giving rise to § 19(a)(2) necessity.

*Id.* at 883 (citing *Makah Indian Tribe*, 910 F.2d at 558). Thus, to the extent the Rincon Band may ultimately be liable to indemnify Defendants for any judgment, or that as a result of a judgment against Defendants, neither Defendants nor any other entity is willing to operate the Resort for the Rincon Band, the resulting loss of income to the Rincon Band does not give rise to a legally protected interest making it a necessary party to this case. *See id.*; *see also Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 971 (9th Cir. 2008) ("The mere fact that the outcome of Colusa's litigation may have some financial consequences for the non-party tribes is not sufficient to make those tribes required parties. . . ."); c*f. Lewis v. Clarke*, 137 S.Ct. 1285, 1293-94 (2017) (holding that a Tribe's "indemnification provision does not somehow convert the suit against [the defendant] into a suit against the sovereign" and noting that this conclusion is consistent with holdings of circuit courts that "a party does not become a required party for joinder purposes under Federal Rule of Civil Procedure 19 simply by virtue of indemnifying one of the named parties").

In sum, the Rincon Band is not a necessary or required party to this case under Rule 19(a). It is therefore not an indispensable party who cannot be joined. Accordingly, the motion to dismiss under Rule 12(b)(7) is denied.

**III. Personal Jurisdiction**

Defendants also move to dismiss the complaint for lack of personal jurisdiction. "Personal jurisdiction over a nonresident defendant is proper if permitted by a state's long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013). "Under California's long-arm statute, California state courts may exercise personal

jurisdiction 'on any basis not inconsistent with the Constitution of this state or of the United States.'" *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (quoting Cal. Civ. Proc. Code Ann. § 410.10 (West 2004)). Thus, "the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-801 (9th Cir. 2004)).

Under the Due Process Clause of the Fourteenth Amendment, to exercise personal jurisdiction over an out-of-state defendant, the defendant must have "certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted)). This minimum contacts jurisdiction may be either "general or all-purpose jurisdiction," or "specific or case-linked jurisdiction." *Id.* at 919 (citing *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).

"Where defendants move to dismiss a complaint for lack of personal jurisdiction, plaintiffs bear the burden of demonstrating that jurisdiction is appropriate." *Dole Foods Co. Inc. v. Watts,* 303 F. 3d 1104, 1108 (9th Cir. 2002). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id.* (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). The uncontroverted allegations in the complaint must be taken as true and factual conflicts must be resolved in Pilant's favor. *Marvix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Thus, to survive Defendants' motion to dismiss here, Pilant must show that each Defendant's minimum contacts with the forum state are sufficient to allow exercise of personal jurisdiction over that Defendant. "[B]are formulaic accusations" that a Defendant maintains sufficient contacts with California are inadequate. *Schwarzenegger*, 374 F.3d at 800.

### A. CES

Although there does not appear to be any dispute that CES is not subject to general jurisdiction in California, Defendants' motion to dismiss for lack of personal jurisdiction is borderline frivolous insofar as it refuses to concede specific personal jurisdiction over CES. The Ninth Circuit applies a three-part test to determine whether a district court can exercise specific personal jurisdiction over a nonresident defendant:

> (1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws (the "purposeful availment" requirement);
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id*. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Here, the motion itself acknowledges that CES has an employment agreement with Pilant, a California resident, that required Pilant to serve as general manager of the Resort, which is located in California. This lawsuit arises out of that employment agreement and out of CES's alleged violation of California employment law with respect to Pilant's employment by CES at the Resort. Finally, Defendants do not contend, nor could they, that the exercise of personal jurisdiction over CES in California for claims arising out of CES's employment of Pilant at a Resort located in California does not comport with fair play and substantial justice. Accordingly, the motion to dismiss for lack of personal jurisdiction over CES is denied.

**B. CEI**

The motion stands on firmer ground, however, with respect to personal jurisdiction over CEI. Defendants include a declaration from CEI's senior vice president and deputy general counsel stating that CEI: (1) is a Delaware corporation with its principal place of business in Reno, Nevada; (2) does not conduct business in or own property in California; (3) was never the employer of Pilant; and (4) had no relationship or affiliation with the Resort prior to July 20, 2020. [Doc. No. 3-5.] Pilant's opposition includes no evidence contradicting this declaration and makes no argument specific to CEI as to why CEI is subject to personal jurisdiction in California. Instead, the opposition, like the complaint itself, jointly refers to CEI and CES as "Caesars" and does not make any arguments or allegations specific to one or the other. Moreover, the complaint appears to concede that CEI did not even become CES's parent company until July 20, 2020—two months after Pilant resigned his employment. Accordingly, because there are neither factual allegations in the complaint nor evidence in the record supporting any CEI contacts with California, the motion to dismiss for lack of personal jurisdiction over CEI is granted.

**IV.    Subject Matter Jurisdiction**

Because the Rincon Band is not an indispensable party, there does not appear to be subject matter jurisdiction due to a federal question related to the IGRA. If federal question jurisdiction was the only ground for removal, the Court would be forced to remand this case.

The notice of removal also asserts jurisdiction based on diversity. The allegations supporting diversity, however, are deficient. The notice of removal states that CES, which is a limited liability company, is a citizen of Nevada because it was established in Delaware and has its principle place of business in Nevada. [Doc. No. 1 at 9.] CES's place of formation and the location of its principle place of business are irrelevant to the existence of diversity jurisdiction. Diversity jurisdiction under § 1332 requires that all parties to the action be "citizens of different states" or "citizens or subjects of a foreign state." 28 U.S.C. § 1332(a). "For purposes of diversity jurisdiction, a limited liability company 'is a citizen

of every state of which its owners/members are citizens.'" *3123 SMB LLC v. Horn*, 880 F.3d 461, 465 (9th Cir. 2018) (quoting *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006)).  The notice of removal here is silent as to the identity and citizenship of CES's owners or members, making it impossible for the Court to determine whether there is complete diversity among the parties.  Accordingly, Defendants must show cause as to why this case should not be remanded for lack of subject matter jurisdiction.

### V. Conclusion

As discussed above, the Rincon Band is not necessary or required party to Plaintiff's claims against his employer.  Accordingly, the motion to dismiss under Rule 12(b)(7) is **DENIED**.  With respect to personal jurisdiction over Defendants, CES is subject to specific personal jurisdiction in California for Plaintiff's claims, so the motion to dismiss the claims against CES under Rule 12(b)(2) is **DENIED**.  However, Plaintiff has not satisfied his burden to establish personal jurisdiction over CEI.  Accordingly, the motion to dismiss the claims against CEI under Rule 12(b)(2) is **GRANTED**.[2]

Finally, Defendants are **ORDERED TO SHOW CAUSE**, in writing, on or before **December 10, 2020**, why this case should not be remanded for lack of subject matter jurisdiction.  Failure to respond to this order will result in remand of this case.

It is **SO ORDERED**.

Dated:  December 1, 2020

                                                  Hon. Cathy Ann Bencivengo
                                                  United States District Judge

---

[2] The motion and opposition are both accompanied by requests for judicial notice of various documents. [Doc. Nos. 3-8, 4-1.]  Because the Court did not consider any of these documents to be relevant to its opinion, both requests are denied as moot.